UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP MORRIS,<br>            Plaintiff,<br>    v.<br>TODAN ASCENCIO, et al.,<br>            Defendants. | Case No. 20-cv-04923-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 16 |

## INTRODUCTION

Plaintiff Phillip Morris alleges in his 42 U.S.C. § 1983 suit that San Quentin correctional officer Todan Ascencio filed a false disciplinary report against him in retaliation for filing lawsuits against prison staff, and that the officer who oversaw the resulting disciplinary hearing, Lieutenant Tracy Jackson, violated his due process right to a fair hearing. Defendants move for summary judgment.

Summary judgment will be granted in favor of both defendants as to all claims. Morris has not shown a genuine dispute of material fact regarding his allegation that his due process rights were violated; the prisoner whom he was not permitted to call as a witness at his disciplinary hearing had died before the hearing. He also has not shown a genuine dispute of material fact regarding his allegation that Officer Ascencio retaliated against him because he has not shown that the disciplinary charge served no legitimate correctional goal.

## BACKGROUND

On October 25, 2018, Officer Ascencio searched a cell assigned to two prisoners named Villa and Archuleta, who were in the cell with plaintiff Morris. Morris contends

that a third person, Grijalva, was standing inside the doorway at the time, and that Officer Ascencio told Grijalva to "kick-rocks" because he did not live there. (Compl., Dkt. No. 1 at 4.) When Officer Ascencio entered the cell, Morris was sitting on the toilet, which was next to a locker in the back of the cell. (MSJ, Ascencio Decl., Dkt. No. 16-1 at 2.) Officer Ascencio found contraband in the form of a homemade syringe in the locker, of which he states all three men denied ownership or knowledge. (*Id.* at 2-3.) He charged Morris, Villa, and Archuleta with Rules Violation Reports (RVR) for possession of drug paraphernalia. (*Id.* at 3.) Morris contends that the syringe was not visible to the naked eye because it was hidden inside an ink pen. (Compl., Dkt. No. 1 at 5.) Officer Ascencio notes the "pen was gray in color and not transparent," and "easily accessible to all three men." (MSJ, Ascencio Decl., Dkt. No. 16-1 at 2.)

Morris asserts that Officer Ascencio told him "that since I like filing lawsuits against officers/Lt. Luna he was going to write me up unless I go make a deal with Lieutenant Luna to get my CDCR § 115 dropped." (Dkt. No. 1 at 3.) He also alleges that Officer Ascencio said, "I know all about the legal work your doing . . . But how is this going to look when you go to the board?" and "You was the only Black in the cell with three Mexicans and to me that look very suspicious. These ain't your people, so what was you doing hanging with dope fiends?" (*Id.* at 3-4.) Morris alleges that Officer Ascencio "then retaliated and wrote" him up. (*Id.* at 4.) Officer Ascencio denies that this conversation took place and states that he was unaware, at the time of the incident, of any lawsuits filed by Morris. (MSJ, Ascencio Decl., Dkt. No. 16-1 at 4.)

In addition to the RVR, Officer Ascencio issued an RVR Supplemental stating:

> Upon review of the circumstances of this situation, I determined that Inmate Morris was in constructive possession of the Drug Paraphernalia. Constructive possession is a legal theory used to extend possession to situations where a person has no hands-on custody of an object. Also known as "possession in law," constructive possession exists where a person has knowledge of an object plus the ability to control the object, even if the person has no physical contact with the object. In addition as said above in my report the Hypodermic syringe was in plain view and easily accessible.

2

(MSJ, Ex. A-1 to Ascencio Decl., Dkt. No. 16-4 at 7.)

Morris was served with the RVR and RVR Supplemental on November 1, 2018. (MSJ, Ex. C to Jackson Decl., Dkt. No. 16-4 at 23.) His hearing took place on November 26, 2018. (*Id.*) Lieutenant Jackson, the hearing officer, recorded Morris's statement at the hearing as follows:

> The syringe isn't mine and I didn't have any knowledge of the syringe. Officer Ascencio is illegally attempting to hold me accountable for another inmates misconduct, and his answer will prove that I did not have the required knowledge and essential element for constructive or actual possession under the law.

(*Id.* at 27.) Lieutenant Jackson asked Officer Ascencio "almost all of the questions" that Morris requested. (MSJ, Jackson Decl., Dkt. No. 16-2 at 5.) Morris asked to call Grijalva as a witness. Lieutenant Jackson did not call Grijalva because he "deemed his testimony to not be relevant to the hearing as Officer Ascencio had listed the persons present at the time he searched the cell and Grijalva was not included." (*Id.*) Lieutenant Jackson also states that "[t]he second reason that Grijalva was not called was he died on November 12, 2018 [that is, before the hearing]. My memory is that I informed Morris of this fact. My memory is also that Morris was already aware that Grijalva had died prior to the hearing." (*Id.*) CDCR's records from Grijalva's central file reflect that he died on November 12, 2018. (MSJ, Ex. H to B. Ebert Decl., Dkt. No. 16-5 at 5.)

Lieutenant Jackson found Morris guilty and assessed 91 days of credit loss, 45 days of privilege loss, and 90 days of drug testing, subject to cancellation if his first results were negative. (*Id*. at 6; MSJ, Ex. C to Jackson Decl., Dkt. No. 16-4 at 28-30.)[1]

After he was found guilty, Morris appealed the disciplinary charges. His appeal was denied at the third level on July 23, 2019. The examiner found that the hearing officer

---

[1] Villa was also found guilty, and assessed 120 days credit loss. (MSJ, Ex. D to Sibley Decl., Dkt. No. 16-4 at 45-46.) Archuleta was referred to the District Attorney for possible criminal prosecution, which the District Attorney did not pursue in the interest of justice and because the evidence was insufficient to prove the charges beyond a reasonable doubt. (MSJ, Ex. F. to Sibley Decl., Dkt. No. 16-4 at 90-91.) His hearing was postponed until the referral process was complete. (MSJ, Ex. E to Sibley Decl., Dkt. No. 16-4 at 72.)

appropriately found Morris guilty based on a preponderance of the evidence, and that Morris was afforded all required due process protections. (Opp., Dkt. No. 17 at 37-38.)

On October 27, 2020, Morris filed in the state appellate court a habeas petition regarding the disciplinary incident.[2] The state appellate court ordered informal briefing on whether the disciplinary decision was supported by "some evidence." Morris included with his opposition filed in this Court a copy of the Attorney General's informal response to his habeas petition in the state appellate court, dated December 11, 2020. (Opp., Dkt. No. 17 at 76-77.) In it, the Attorney General argued that the case was moot because "the prison vacated the rules violation report, ordered all documentation to be expunged from Morris's prison file, and restored his 91-day credit forfeiture." (*Id.* at 77.) The Attorney General included exhibits demonstrating that the RVR was "Voided" and "ordered expunged from [Morris's] record" on December 8, 2020 with the reason identified as "Interest of justice" and "Based on a recommendation from the CDCR Office of Legal Affairs." (*Id.* at 79, 81.) The exhibits also demonstrated the voiding of Morris's credit loss. (*Id.* at 84.) On January 7, 2021, the state appellate court dismissed the habeas petition as moot.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of

---

[2] I take judicial notice of the California Court of Appeal docket for Morris's habeas petition, case number A161228. *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) ("Materials from a proceeding in another tribunal are appropriate for judicial notice").

4

a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). A court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322 (internal quotation marks omitted).

## DISCUSSION

Defendants contend that Morris's claims are moot because his record was expunged, and that he has not raised a triable issue of fact regarding whether his due process rights were violated, nor regarding whether he was retaliated against for filing other lawsuits. Morris's claims are not moot because he seeks damages for violation of his constitutional rights. But he has not raised a triable issue of fact regarding his due process or retaliation claim.

**1.     Mootness**

Defendants argue that, based on the documents Morris submitted with his Opposition, "his entire lawsuit [is] moot." (Reply, Dkt. No. 20 at 1.) They contend that the apparent expungement and voiding of the disciplinary charges and punishment moots the due process claim. (*Id.* at 7.) However, Morris's complaint seeks injunctive and

5

declaratory relief as well as damages. (Compl., Dkt. No. 1 at 10.) A plaintiff's claims for damages for violation of his constitutional rights are not moot even if the disciplinary charges have been voided and his record expunged. *See Independent Living Center of Southern California, Inc. v. Maxwell-Jolly*, 590 F.3d 725, 728-29 (9th Cir. 2009) (when intervening legislation has settled a controversy involving only injunctive relief, but plaintiff also sought damages when filing suit, the controversy is not rendered moot as to claim for damages).

While the Ninth Circuit has held that a prisoner is not denied due process where a due process error is "corrected in the administrative appeal process," which is "part of the due process afforded prisoners," *Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015) (quoting *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995)), Morris's RVR was not expunged as part of CDCR's administrative appeal process. His guilty finding was upheld throughout the administrative appeals process, and appears to have been expunged only on the advice of CDCR's counsel after Morris filed a habeas petition in state court. In contrast, "in § 1983 cases, a plaintiff can recover compensatory damages for a proven due process violation . . . if the deprivation was unjustified on the merits." *Raditch v. United States*, 929 F.2d 478, 482 (9th Cir. 1991). "[C]ompensable damages for a section 1983 violation include mental and emotional distress actually caused by the denial of procedural due process," even if the ultimate deprivation was justified. *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 781 (9th Cir. 1982) (citing *Carey v. Piphus*, 435 U.S. 247, 262-63 (1978)). By the same logic, even if the ultimate deprivation in Morris's case was reversed, he is still entitled to compensatory damages—independent of the outcome of the process—should I determine that his procedural due process rights were violated.

Neither is Morris's retaliation claim—with respect to any of the forms of relief sought—mooted by the expungement or reversal of the RVR findings. The reversal does not remedy or address the underlying alleged retaliation.

**2.    Due Process**

Morris asserts that Lieutenant Jackson violated his right to due process at the

disciplinary hearing by refusing to call Grijalva as a witness as Morris requested and by finding him guilty based on insufficient evidence. (Compl., Dkt. No. 1 at 6-7.) He also claims he was "entitled to a written statement by T. Jackson as to the evidence relied on and the reasons[] for this disciplinary action[]" and that "[t]he practice of simply adapting the report of staff members with no further explanation denies due process." (*Id.* at 8.) He notes that "defendant Jackson provided no explanation whatever for believing the written reports of officer Ascencio over the personal testimony of the plaintiff." (*Id.*)

Defendants argue, first, that Morris was not entitled to due process because the charges did not implicate a liberty interest. Second, they argue that Morris received due process in connection with his RVR hearing.

Prisoners have a liberty interest, protected by due process, in avoiding an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The placement of a California prisoner in isolation or segregation, or the assessment of good-time credits against him, as a result of disciplinary proceedings, for example, is subject to procedural protections if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty in question is one of "real substance." *Id.* at 477-87 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). *Wolff* requires five procedural protections: (1) written notice of the charges, (2) "[a]t least a brief period of time after the notice, no less than 24 hours . . . to . . . prepare" for a hearing, (3) a "written statement by the factfinders as to the evidence relied on and reasons," (4) the ability to call witnesses and obtain and present documentary evidence in defense, and (5) assistance from staff or another prisoner where the charged prisoner is illiterate or the issues highly complex. *Wolff*, 418 U.S. at 564-70.

Even where the discipline imposed is neither so severe as to implicate the Due Process Clause itself, nor implicate a state created liberty interest, it nonetheless violates an inmate's right to procedural due process if the discipline is supported by "no evidence." *See Burnsworth v. Gunderson*, 179 F.3d 771, 773-74 (9th Cir. 1999). Morris asserts that

7

he was denied the third and fourth *Wolff* protections, and that the guilty finding was without sufficient evidence.

To start, it is undisputed that Morris only asked to call one witness other than Officer Ascencio—another prisoner named Grijalva—and that Grijalva was no longer alive at the time of Morris's hearing. Obviously, Lieutenant Jackson could not have violated Morris's due process rights by refusing to call a witness who was deceased.[3] But Lieutenant Jackson also refused to call Grijalva because he determined that Grijalva's testimony was not relevant since Officer Ascencio stated that Grijalva was not present.

While a hearing officer may refuse to call a witness based on "irrelevance, lack of necessity, or the hazards presented in individual cases," such as "a risk of reprisal," *see Wolff*, 418 U.S. at 566, refusing to call one because the very relevance of their testimony requires crediting the prisoner's account and discrediting a testifying officer is problematic. If Morris had told Lieutenant Jackson that Grijalva was witness to the explicitly retaliatory statements by Officer Ascencio, refusing to call him based on relevance because Officer Ascencio said he was not present would have been significantly concerning; it would have left Morris with no way to prove his version of events and insulated Officer Ascencio's version from challenge. But Morris intended to call Grijalva to testify only that "he was inside of the cell with plaintiff and the two residen[t]s, and did not receive a CDCR § 115." (Opp., Dkt. No. 17 at 5.) Such testimony would have had little impact on Morris's case. Because Morris does not contest that he was in the cell, to which he was not assigned; that the syringe was found in the cell within his reach; and that Officer Ascencio charged two other prisoners and not him alone, the presence of a fourth person who was not charged would not make a material difference in proving retaliation or innocence.

---

[3] Morris has not demonstrated that Lieutenant Jackson applied a blanket refusal to call witnesses or a "categorical[] exclu[sion of] a broad class of witnesses" at his hearing like in *Whitlock v. Johnson*, 153 F.3d 380, 386 (7th Cir. 1998), which he cites in his opposition filing. (*See* Opp., Dkt. No. 17 at 5.)

8

Morris also challenges the adequacy of the statement of reasons he received. In the written disposition, Lieutenant Jackson explained the basis of the guilty finding and evidence considered:

> SHO considered Officer's report which reads: I conducted a routine cell search of 2-NB-83 occupied by Inmates Villa (2-NB-83L, BE8847) and Archuleta (2-NB-83U, AZ7183). I opened the cell door and observed three inmates in the cell. Inmate Morris (4-NB-88U, H59819) was sitting on the toilet in the rear of the cell while both Villa and Archuleta, were lying on their assigned bunks. While Officer J. Vang provided coverage, I donned a pair of blue nitrile gloves and gave the inmates a direct order to step out of the cell to which they complied. First, I conducted a clothed body search on Inmate Villa and noticed a fresh puncture wound resembling an injection mark on his left arm located in his inner elbow. Next, I performed clothed body searches of the remaining two inmates resulting in negative findings for contraband and free of freshly puncture wounds. I initiated my cell search near the toilet area and discovered One (1) Blue Ink pen on the upper left compartment of the locker located in the rear of cell. The pen was gray in color and not transparent. The Pen was easily accessible to all inmates in the cell. While searching inside the blue ink pen, I discovered One (1) Inmate Manufactured Hypodermic Syringe with Needle.
>
> SHO considered inmate Morris statement.
>
> SHO considered witness statements.
>
> SHO considered photographs taken which showed the inmate manufactured hyp[o]dermic syringe hidden inside of a solid gray in color ink pen casing.
>
> SHO considered all evidence and concluded that inmate Morris was found inside of cell that he was not assigned to and there was a[n] inmate manufactured hyp[o]dermic syringe found inside of the cell. Per the Officer's report the syringe was in an area where it could be easily access[s]ible to any of the three (3) inmates. The evidence outweighs the findings of 'not guilty'. SHO found inmate Morris 'Guilty'.

(MSJ, Ex. C to Jackson Decl., Dkt. No. 16-4 at 28.) Morris claims that "[a]fter the hearing [he] received a written disposition stating only, 'Guilty as charged based on staff statements,'" (Opp., Dkt. No. 17 at 29), but he attaches the same version of the disposition included in defendants' exhibits and quoted here. (*Id.* at 86-95.) This disposition meets the requirement of a "written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563-64.

9

Finally, Morris argues that there was insufficient evidence for the guilty finding. He claims that "[t]he evidence at the hearing consisted solely of the written reports of the three officers and my testimony." (Opp., Dkt. No. 17 at 29.) The written disposition, in contrast, documents that Officer Ascencio was called as a live witness at the hearing. (MSJ, Ex. C to Jackson Decl., Dkt. No. 16-4 at 26-27.) While Lieutenant Jackson declares that he asked "almost all" the questions that Morris provided for Officer Ascencio, the summary judgment record before the Court does not appear to contain the remaining questions provided by Morris that Lieutenant Jackson did not ask. But this missing information is not material; Morris has not made any complaints regarding any questions he had for Officer Ascencio that were not asked.

The undisputed evidence upon which Lieutenant Jackson based the guilty finding meets the "some evidence" standard for constructive possession of the syringe. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Morris's dispute is not with the evidence of constructive possession but the CDCR regulations that authorize penalties for constructive possession of drug paraphernalia.

Morris received due process in connection with the RVR. Summary judgment is therefore appropriate for Lieutenant Jackson on this claim.

### 3.  Retaliation

Morris asserts that Officer Ascencio wrote him up in retaliation for lawsuits that he filed against a different correctional officer and that Officer Ascencio explicitly stated that he would drop the RVR if Morris dropped his lawsuits. Officer Ascencio avers that he did not make those statements and had no knowledge of the other lawsuits.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Retaliation is actionable under section 1983 even where the

10

underlying adverse action would have been appropriate had it been taken for non-retaliatory reasons. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977).

Morris's retaliation claim plausibly meets some of the five elements. He experienced adverse action. He engaged in protected conduct: he states that he had pending lawsuits against another officer and defendants have not contested that. And defendants have also not disputed the chilling effect that the adverse action would have if it were indeed retaliatory.

The second element, causation or motive, is disputed. In order to create a genuine issue of material fact on causation or motive, a plaintiff must establish "'in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech, or (3) evidence that the defendant's proffered reason for the adverse action was false or pretextual.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (internal citation and emphasis omitted). The summary judgment record lacks adequate evidence to make a determination as to causation, as there is a credibility contest between Morris and Officer Ascencio as to whether the officer made explicitly retaliatory statements. There is no evidence in the record as to proximity in time of Morris's filing of his other lawsuits. There is little evidence regarding whether the proffered reason was pretextual.

But because Morris cannot meet his burden with regard to the fifth element, I do not need to reach the merits regarding the second element. Morris "bears the burden of pleading and proving the absence of legitimate correctional goals" for the constructive possession charge. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). He does not dispute that he was in the cell where the syringe was found; rather, he takes issue with the constructive possession theory on which he was charged. (*See*, *e.g.*, Opp., Dkt. No. 17 at 24 ("There was no contraband found on my person, however I was charged with unauthorized possession of drug paraphernalia"; "I was removed from [the cell] and

searched for contraband with negative results. I was later charged with unauthorized possession of drug paraphernalia.").)

Although there was insufficient evidence for the District Attorney to proceed with charges against Archuleta, the standards for prison disciplinary charges are lower. CDCR's regulations define possession as follows:

> Possession is defined as either actual possession or constructive possession of an object. Actual possession exists when a person has physical custody or control of an object. Constructive Possession exists where a person has knowledge of an object and control of the object or the right to control the object, even if the person has no physical contact with it.

Cal. Code Regs. tit. 15, § 3000. Section 3016 of the same title prohibits prisoners from possessing drug paraphernalia as defined by California Health & Safety Code section 11014.5, which includes "Hypodermic syringes, needles, and other objects designed for use or marketed for use in parenterally injecting controlled substances into the human body."

"Legitimate goals of a correctional institution include the preservation of internal order and discipline and the maintenance of institutional security." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995), citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). This includes "keeping drugs out of the prison." *Thompson v. Souza*, 111 F.3d 694, 701 (9th Cir. 1997). Morris cannot show that charging him and the two other men with constructive possession of the syringe, which he does not deny was within his reach in a cell that was not his own, served no legitimate correctional goal.[4] Summary judgment is therefore appropriate for defendant Ascencio with respect to Morris's

---

[4] Morris's case is unlike *Hines v. Gomez*, 108 F.3d 265, 267, 269 (9th Cir. 1997), where the plaintiff challenged and disputed the factual basis of a retaliatory charge of "stopping while being escorted." The court held that *Superintendent v. Hill*, 472 U.S. 445 (1985), which held that "some evidence" was sufficient to support a prison disciplinary decision, does not apply to "immunize retaliatory accusations by prison guards." Unlike in *Hines*, the charge against Morris was not an accusation based on an officer's word alone, but was based on the undisputed fact of Morris's proximity to contraband.

retaliation claim.[5]

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.  The clerk shall terminate all pending motions, enter judgment in favor of defendants, and close the file.

**IT IS SO ORDERED.**

**Dated:**  January 27, 2022



WILLIAM H. ORRICK
United States District Judge

---

[5] I recognize that a California prisoner brought a federal constitutional challenge to the use of constructive possession in California prison disciplinary proceedings in 2019.  Morris has not made this type of challenge.  That case was dismissed without prejudice on the basis of Eleventh Amendment immunity, because the plaintiff had named CDCR as the defendant and because the plaintiff had failed to establish a protected liberty interest in the potential that the parole board could rely on the guilty finding to deny him parole. *O'Connor v. California Dep't of Corr. & Rehab.*, No. 219CV1867WBSEFBP, 2020 WL 616208, at *2 (E.D. Cal. Feb. 10, 2020).  The plaintiff voluntarily dismissed the case instead of amending his complaint in March 2020, due in part to the closure of the law library at the California Health Care Facility because of COVID-19.  *See O'Conner v. CDCR*, 2:19-cv-01867-WBS-EFB (E.D. Cal.), at Dkt. No. 16.

13